UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA LYNN DEJAEGHER,

       Plaintiff,                       Case No. 1:15-CV-1093

v.

                                      HON. RAY KENT

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was thirty-one years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.51, 110, 120.) She completed her formal education after the eleventh grade and was previously employed as a nurse's assistant. (PageID.103, 213.) Plaintiff applied for benefits on February 25, 2013, alleging that she had been disabled since November 1, 2011, due to severe lower back problems and mild GAD (generalized anxiety disorder.) (PageID.110, 120, 182–194.) Plaintiff's applications were denied on May 9, 2013, and Plaintiff subsequently requested

a hearing before an ALJ. (PageID.133–141.) On April 10, 2014, Plaintiff appeared with her counsel before ALJ Richard Gartner for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.69–108.) In a written decision dated June 6, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.51–68.) Thereafter, on September 4, 2015, the Appeals Council declined to review the ALJ's decision. (PageID.25–28.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545. 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520©, 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing her past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Gartner determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2011, the alleged disability onset date. (PageID.56.) At step two, the ALJ found that Plaintiff suffered from a severe impairment of degenerative disc disease of the lumbar spine. (PageID.56.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.57.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: limited to occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; occasional overhead work; must avoid climbing ladders, ropes or scaffold; must be afforded the option to sit and stand during the workday for five to ten minutes every hour or so or more with the permission of the employer; limited to occasional pushing and pulling with the lower left and right extremities to include the operation of foot pedals; and limited to occupations, which do not require exposure to dangerous machinery and unprotected heights.

(PageID.58.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.61.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform

given her limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as an accounting clerk (65,000 jobs), information clerk (80,000 jobs), and office clerk (90,000 jobs). (PageID.103–105.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.62.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from November 1, 2011, the alleged onset date, through June 6, 2014, the date of decision. (PageID.62–63.)

## DISCUSSION

### 1. Plaintiff's Obesity.

The record demonstrates that Plaintiff is obese, with a height of 5 feet 7 inches and a weight ranging between 239 and 256 pounds. Plaintiff first contends that the ALJ erred by failing to find that her obesity constituted a severe impairment at step two, and further failed to properly evaluate her obesity throughout the rest of the evaluation as required by SSR 02-1p. (PageID.429–433, 456–457.) The Court discerns no error here. At step two of the sequential analysis, the ALJ found that Plaintiff's degenerative disc disease constituted a severe impairment. Where, as here, at least one severe impairment is found at step two of the sequential analysis, the ALJ's failure to list additional impairments as severe at step two cannot provide a basis for reversing the Commissioner's decision. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

Plaintiff did not testify that she had any obesity-related functional restrictions. No treating or examining physician imposed restrictions based on Plaintiff being obese. While it may have been preferable that the ALJ say a few words regarding Plaintiff's obesity, the lack of

discussion on the matter appears to be due to the paucity of evidence in the record concerning her weight.  The most Plaintiff is able to point to are a few records documenting her weight and BMI as well as vague recommendations that she lose weight.  These records do not demonstrate error on the part of the ALJ.  In fact courts have regularly held that under such circumstances an ALJ's failure to mention obesity or SSR 02–1p is not reversible error.  *See Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004) (rejecting a similar argument by stating "[a]lthough his treating doctors noted that Forte was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions"); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) *Broz v. Astrue*, No. 3:07cv204, 2008 WL 1995084, at *15 (N.D. Fla. May 5, 2008); *Rodriguez v. Comm'r of Soc. Sec.*, No. 7:06-CV-151-BH, 2008 WL 1958985, at * 12 (N.D. Tex. Apr.29, 2008).

Indeed, SSR 02–1p cautions that the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will evaluate each case based on the information in the case record." SSR 02–1p, 2002 WL 3468281 at *6 (S.S.A. 2002).  In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent medical opinions and evidence to show specifically how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work.  Plaintiff has not done so here, and this claim of error will be denied.

**2.     The ALJ's Step 3 Evaluation.**

The gist of Plaintiff's next claim is that the ALJ failed to properly address Listing 1.04A. (PageID.433–436, 457–458.) A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that [her] condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that [her] condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that [she] meets or equals a listed impairment, [she] must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Listing 1.04A provides as follows:

1.04    Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

In evaluating this listing, the ALJ noted that: "No treating or examining physician had indicated findings that would satisfy the severity requirements of [Section] 1.00, or any other listing. The undersigned concluded that the claimant's impairments do not meet the requirements of any listing." (PageID.57.) Plaintiff argues this analysis falls well short of establishing whether a claimant meets or equals a listed impairment. (PageID.433–436, 457–458.)

As an initial matter, Plaintiff did not argue to the ALJ, either at the hearing or through briefing, that she satisfied the requirements of Listing 1.04. Thus, this is not a circumstance in which the ALJ failed to address an argument with which he was specifically presented. *See, e.g.*, *Oldenkamp v. Comm'r of Soc. Sec.*, 2015 WL 505805 at *5 n.2 (W.D .Mich., Feb. 6, 2015) (noting that a relevant issue when assessing an ALJ's step three analysis is whether the claimant presented to the ALJ a claim or argument that he satisfied a particular listing).

Second, the Sixth Circuit has concluded that the failure by an ALJ to provide extensive reasoning at step three is not, by itself, grounds for relief. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir., Nov. 17, 2014) ("we decline Forrest's invitation to extend *Wilson* to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry, especially where Forrest did not argue at the hearing that he met a particular listing"). As the *Forrest* court further observed, the ALJ's failure to provide detailed analysis at step three is no

basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.* at 366.  As the court recognized, there is "no need to require the ALJ to spell out every fact a second time." *Id.*  Here, the ALJ discussed the medical record in detail and articulated ample support for his determination that Plaintiff did not satisfy Section 1.04 of the Listings.  (PageID.59–61.)

Finally, the *Forrest* court recognized that any error with respect to the ALJ's step three analysis is harmless unless a claimant can establish that she satisfied the listing in question. *Id.*  The medical record in this case belies any argument by Plaintiff that she satisfies listing 1.04A.

Plaintiff complained of lower back pain prior to her alleged onset date.  In February of 2011, a neurologist found she had a mild disc bulge, but there was no evidence of radiculopathy and Plaintiff was determined to be a non-surgical candidate.  (PageID.304.)  It was recommended that she lose weight, undergo physical therapy and perform core strengthening exercises.  (PageID.304.)  Scans on June 18, 2011, found "five non-rib bearing lumbar type vertebral bodies.  Height and alignment is preserved.  Negative for fracture/compression deformity or subluxation.  Disc space narrowing with endplate degenerative change and facet arthropathy at L5/S1."  (PageID.313.)  Plaintiff continued to complain of back pain and difficulty walking.  (PageID.315.)  Scans conducted on July 14, 2012, generally found minor disc bulging with no disc herniation, central canal stenosis, or nerve foot impingement. (PageID.333–334.)  At L5-S1, however, there was moderate bilateral facet arthropathy that, along with some disc bulging, resulted in "mild central canal stenosis with AP dimension of thecal sac measuring 8 mm . . . the bulging disc extends up to but does not appear to significantly impinge upon the descending S1 nerve roots.  There is mild bilateral neural foraminal narrowing with no impingement on the exiting L5 nerve roots."

(PageID.334.) A month later, Dr. Scott Kuhnert stated that "[s]he has fairly mild changes noted on her MRI exam." (PageID.347.) Generally, Plaintiff was treated with medication and injections. (PageID.335.) While Plaintiff was noted, at times, to have positive straight let raise tests and a decreased range of motion on her spine, at several visits, it was noted she was able to achieve transitional motions, that is, to shift from a sitting to standing position and visa versa, without difficulty and was further noted to have a non-antalgic gait pattern. (PageID.339–340, 342, 344, 346.) A July 3, 2013, MRI was conducted that, when compared to the July 2012 MRI, demonstrated progression of Plaintiff's degenerative disc disease at L5-S1, but was still described as only mild to moderate in severity. (PageID.402.)

While the Court does not doubt that Plaintiff's low back pain imposes a certain amount of limitation, Plaintiff's lay interpretation of this medical evidence, i.e., that the MRI studies demonstrated nerve root compression as required under Listing 1.04, is not sufficient to establish the requirements of the Listing. *See, e.g.*, *Garcia v. Colvin*, No. 14 C 4865, 2015 WL 4658283 at *6 (N.D. Ill. Aug. 5, 2015) (claimant's lay interpretation of a diagnostic image, coupled with her own testimony, was insufficient to establish the existence of a cardiovascular impairment under Listing 4.00). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff does not meet the requirements of Listing 1.04.

There is one additional wrinkle in that Plaintiff further argues that even if she does not meet the requirements of Listing 1.04A, given her fatigue and chronic pain, she nonetheless equals the requirements of the listing. (PageID.435.) It is possible for a claimant to provide evidence of a medical equivalent to a listing. 20 C.F.R. §§ 404.1526, 416.926. "To demonstrate such a medical equivalent, the claimant must present medical findings equal in severity to *all* the criteria

for the one most similar listed impairment." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original)); *Thacker*, 93 F. App'x at 728.

Plaintiff made no attempt to satisfy her burden of demonstrating equivalence. The medical evidence that she presented in support of her claims did not include any opinion by an acceptable medical source indicating that Plaintiff had impairments equivalent in severity to the criteria of any listed impairment, individually or in combination. Plaintiff did not satisfy her burden by ignoring it. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014); *Hayes v. Comm'r of Soc. Sec.*, No. 1:09–cv–1107, 2011 WL 2633945, at * 5 (W.D. Mich. June 15, 2011). Accordingly, this claim of error fails.

### 3. The ALJ's Credibility Evaluation.

At the administrative hearing, Plaintiff testified that she was impaired to an extent far greater than that found by the ALJ. She testified that she experienced consistent back pain that would often radiate into her legs. (PageID.81.) At the beginning of the day her pain would rate an eight on a scale of zero to ten and reduce to seven after taking her medication, but she would end the day at the maximum pain level of ten. (PageID.82.) She stated there was little that helped alleviate her pain, but she would spend the majority of the day (at least six hours) in a recliner with a heating pad. (PageID.83.) She could not handle a broom or a mop, as it put too much pressure on her back. (PageID.91.) She could also only put dishes in the dishwasher, but not unload them. (PageID.91.) The ALJ found Plaintiff's statements were "not entirely credible." (PageID.58.) Plaintiff claims the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529, 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d

1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ's determination here is well supported. The ALJ began by noting Dr. Joel Bez's statement that he would not sign an affidavit saying Plaintiff could not work because he could not "find any objective evidence to say that she cannot actually work." (PageID.376.) Plaintiff faults the ALJ for apparently neglecting the medications she was taking. But the ALJ explicitly stated Plaintiff was taking medication and appeared to experience a great deal of benefit from her prescriptions. Indeed the evidence of record demonstrates that Plaintiff is able to shift positions between standing and sitting without difficulty and is able to walk with a normal gait–all at odds with her statements about back pain limiting her mobility. Plaintiff further claims the ALJ's reference to the medical record to discount her testimony was in error because the record is "replete with findings and X-Rays and MRIs along with a discograph that sustain plaintiff's spinal stenosis." (PageID.437.) There are two problems with this statement. First, Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction. She must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or

13

even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). Second, to the extent Plaintiff claims she is disabled because she has spinal stenosis, "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir.1988). Here, the records referenced by Plaintiff demonstrate that the spinal stenosis was only mild to moderate, lending support to Dr. Bez's statement that there was no objective evidence indicating she could not work.

Finally, Plaintiff argues the ALJ erred by misrepresenting her dailiy activities. The regulations expressly authorize the ALJ to consider a claimant's daily activities when "[e]valuating the intensity and persistence of . . . symptoms . . . and determining the extent to which . . . symptoms limit [the] capacity for work." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, an ALJ may discredit a person's testimony when it contradicts the evidence provided, which may include reports of daily living activities. *Walters*, 127 F.3d at 531–32. Here, the ALJ noted that Plaintiff's testimony pertaining to the severity of her symptoms was not credible partially because it was inconsistent with her reported activities of daily living. The Court disagrees with Plaintiff that the ALJ misrepresented her activities. The ALJ stated in relevant part:

> [T]he claimant was caring for her one-year-old child at the time. She could perform simple household chores, including the laundry. She would prepare simple meals. She would watch television, go on the internet and read on a regular basis. She could perform personal care and grooming. She would go around walking, driving and riding in a car. She would shop in stores. She could handle her finances. She would socialize with others and go out to movies. She was not using any assistive device (Exhibit 4E and 5#). During the hearing, the claimant testified that she is taking care of her two-year-old-daughter at home while her boyfriend is at work. She would attend doctor's

> visits by herself.  She would drive over to her parents' house to see her thirteen-year-old daughter up to four times per week and spend [a] few hours with her talking about school and other things.  She would socialize with friends and family members.  She would use Facebook to communicate and send pictures.  She would read and watch soaps and other television programs.

(PageID.60.)  All this is consistent with the relevant portions of Plaintiff's testimony and her reports on her function report.  (PageID.227–234.)  Plaintiff claims that these activities are not inconsistent with her complaints.  She notes that she testified she could not pick up her child, and further states she would only do the above activities in spurts.  (PageID.436–437.)  The Court discerns no error.  Clearly these activities, even if done in spurts, require greater abilities than those Plaintiff claims she is capable of.   This claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated:  March 16, 2017                     /s/ Ray Kent
                                           RAY KENT
                                           United States Magistrate Judge